PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | CASE NO.  1:19CR0282 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| CHRISTOPHER COFFER, | ) | |
| | ) | **ORDER** |
| Defendant. | ) | [Resolving ECF No. 79] |

Pending is Defendant Christopher Coffer's Motion for Compassionate Release Under

18 U.S.C. § 3582(c)(1)(A) (Non COVID) (ECF No. 79), filed by retained trial counsel on June 6,

2024.[1]  The Government has filed a response in opposition (ECF No. 85).[2]  Thereafter, Defendant

filed a Reply in support of his motion (ECF No. 87).  For the reasons that follow, Defendant's

motion is denied.

**I.  Background**

In 2020, Defendant pleaded guilty without a plea agreement to receipt and distribution of

---

[1]  Counsel filed a Notice of Appearance and Request to Substitute Counsel (ECF No. 19).  The Court subsequently granted the request to substitute counsel.  *See* Non-document Order dated October 2, 2019.

[2]  In compliance with a prior Marginal Order (ECF No. 84) and Electronic Filing Policies and Procedures Manual (Feb. 10, 2020) at §§ 19 and 24, the Government filed the Bureau of Prisons ("BOP") Health Services Records of Defendant for 2023 (ECF No. 86-1), 2024 (ECF No. 86-2), and 2024 Updated as of June 2024 (ECF No. 86-3) under seal.

(1:19CR0282)

visual depictions of minors engaged in sexually explicit conduct, in violation of 18 U.S.C.

§ 2252(a)(2) (Count 1), and possession of child pornography, in violation of 18 U.S.C.

§ 2252A(a)(5)(B) (Count 2).  *See* Transcript of Change of Plea Hearing (ECF No. 50); Non-

document Minutes of Proceedings dated January 30, 2020.

      Based upon a total offense level of 34 and a criminal history category of I, the guideline

imprisonment range was 151 months to 188 months, with a 5-year mandatory minimum sentence

for Count 1 and maximum terms of 20 years each for Counts 1 and 2.  At sentencing, Defendant

requested a downward variance from that range based on his health issues (specifically diabetes

and hypertension, asserting that he received disability benefits for diabetic nephropathy and

suffered from severe tooth decay and retinopathy) and that his health conditions placed him at

higher risk of death or complications from COVID-19.  Transcript of Sentencing Hearing (ECF

No. 51) at PageID #: 289-90, 297.  The Court denied the request for a downward variance based

on Defendant's health issues, noting that the BOP "manages many serious health concerns" and

concluding that the conditions, even in the context of the COVID-19 pandemic, did not justify a

downward variance.  Nevertheless, the Court varied downward by two levels based on the

sentencing factors under 18 U.S.C. § 3553(a) and the need "to leave room for [Defendant] to

improve [his] own conduct and condition."  ECF No. 51 at PageID #: 300; 302.  Applying that

2-level variance, and after considering the § 3553(a), the Court sentenced Defendant to a

below-guidelines term of 121 months of imprisonment as to each of Counts 1 and 2, each such

term to be served concurrently.  The Court delayed Defendant's report date until after he was

able to undergo and recover from a variety of scheduled medical procedures.  *See* ECF No. 51 at

(1:19CR0282)

PageID #: 314-15; Judgment in a Criminal Case (ECF No. 44) at PageID #: 189.  The Court also

imposed  a 5-year term of supervised release as to each of Counts 1 and 2, each such term to be

served concurrently.  *See* ECF No. 51 at PageID #: 303;  Non-document Minutes of Proceedings

dated August 13, 2020; ECF No. 44.  Defendant appealed to the United States Court of Appeals

for the Sixth Circuit, which affirmed the district court.  *United States v. Coffer*, 860 Fed.Appx.

416 (Mem) (6th Cir. 2021) (per curiam) (ECF No. 57).

     In June 2022 during the COVID-19 pandemic, retained trial counsel filed Defendant's

Motion for Compassionate Release and/or Commutation to Home Confinement (ECF No. 63).

After full briefing by the parties, the Court denied the motion in an Order (ECF No. 71) entered

in April 2023.  The Court concluded Defendant failed to show an extraordinary and compelling

reason and that the relevant factors under 18 U.S.C. § 3553(a) did not weigh in favor of a

sentence reduction.  Defendant did not appeal the Court's ruling to the Sixth Circuit.

     Defendant is currently serving his prison sentence at FCI Butner Low ("Butner Low").[3]

Defendant avers that the Court should reduce his sentence to time served to ensure he receives

the necessary medical attention that the BOP has failed to provide.  *See* ECF No. 79 at PageID #:

1763; ECF No. 87 at PageID #: 2769; *United States v. Scampitilla*, No. 1:11CR0282, 2021 U.S.

Dist. LEXIS 56575 (N.D. Ohio March 25, 2021) (granting motion to reduce sentence considering

the likelihood of severe medical complications or death should defendant contract COVID-19).

---

[3]  *See* http://www.bop.gov/inmateloc/ (last visited Nov. 4, 2024).  Butner Low is a
low security federal correctional institution.  Defendant's anticipated release date is
October 10, 2029.

3

(1:19CR0282)

Defendant has the same health issues as he did in 2022 when he previously moved for

compassionate release.

## II. Legal Standard for Seeking Compassionate Release

Under 18 U.S.C. § 3582(c)(1)(A), as modified by the First Step Act, Pub. L. No. 115-391,

132 Stat. 5194 (Dec. 21, 2018), a court may reduce a defendant's sentence upon motion of the

Director of the BOP or the defendant. The Sixth Circuit has provided that district courts must

follow a "three-step test" for determining whether to grant a defendant's motion for

compassionate release. *United States v. Jones*, 980 F.3d 1098 (6th Cir. 2020).

> At step one, a court must "find[ ]" whether "extraordinary and compelling reasons
> warrant" a sentence reduction. At step two, a court must "find[ ]" whether "such
> a reduction is consistent with *applicable* policy statements issued by the
> Sentencing Commission." The Commission's policy statement on compassionate
> release resides in U.S.S.G. § 1B1.13. Thus, if § 1B1.13 is still "applicable,"
> courts must "follow the Commission's instructions in [§ 1B1.13] to determine the
> prisoner's eligibility for a sentence modification and the extent of the reduction
> authorized. At step three, "§ 3582(c)[(1)(A)] instructs a court to consider any
> applicable § 3553(a) factors and determine whether, in its discretion, the reduction
> authorized by [steps one and two] is warranted in whole or in part under the
> particular circumstances of the case."

*Id.* at 1107-1108 (alterations and emphasis in original) (citations omitted). In considering a

compassionate release motion, "district courts may deny compassionate release motions when

any of the three prerequisites listed in § 3582(c)(1)(A) is lacking and do not need to address the

others" but must "address all three steps" if granting such a motion. *United States v. Elias*, 984

F.3d 516, 519 (6th Cir. 2021).

The Sentencing Commission amended the policy statement in § 1B1.13 to encompass

inmate-filed motions for compassionate release. U.S.S.G. § 1B1.13 (2023). As such, district

4

(1:19CR0282)

courts analyzing motions filed by prisoners after November 1, 2023, consider § 1B1.13 in their

analysis.  *United States v. Whitworth*, No. 1:23CR0561-4, 2023 WL 8190131, at *2 (N.D. Ohio

Nov. 27, 2023) ("A new United States Sentencing Commission policy statement now applies to

18 U.S.C. § 3582(c)(1)(A) motions brought by inmates after November 1, 2023."); *United States*

*v. Harris*, No. 23-5187, 2023 WL 10294625, at *2 (6th Cir. Dec. 4, 2023) (considering the

updated policy statement).  As amended, § 1B1.13(b) states that "[e]xtraordinary and compelling

reasons exist under any of the following circumstances or a combination thereof," and discusses

when the medical circumstances of the defendant, the age of the defendant, the family

circumstances of the defendant, the defendant's victimization in custody, and other reasons may

constitute extraordinary circumstances.  U.S.S.G. § 1B1.13(b)(1)-(5).

A defendant is eligible to seek compassionate release from a court after he has exhausted

all administrative rights to appeal the BOP's failure to bring a motion on his behalf *or* thirty days

have elapsed since requesting that the warden of his facility initiate such action.  18 U.S.C.

§ 3582(c)(1)(A); *United States v. Alam*, 960 F.3d 831, 834 (6th Cir. 2020) ("Prisoners who seek

compassionate release have the option to take their claim to federal court within 30 days, no

matter the appeals available to them.").

### III.  Discussion

### A.

Defendant has properly exhausted his administrative remedies under 18 U.S.C.

§ 3582(c)(1)(A).  In May 2024, Defendant's retained trial counsel sent a request to the Warden of

his institution seeking a compassionate release based on Defendant's "significant medical issues

(1:19CR0282)

and the corresponding failure of the institution to provide adequate care."  *See* Letter (ECF No. 79-1).  In her June 2024 denial of the request, the Warden stated, in relevant part:  "It has been determined that you do not meet the criteria under debilitated at this time.  You are independent in your activities of daily living and your current medical conditions remain under control."  ECF No. 85-2.[4]  The Government concedes that Defendant has satisfied the exhaustion requirement under § 3582(c)(1)(A).  *See* ECF No. 85 at PageID #: 1782; *Alam*, 960 F.3d at 833 ("They must 'fully exhaust[ ] all administrative rights' or else they must wait for 30 days after the warden's 'receipt of [their] request.' ").

**B.**

**1.**

Defendant is a 47-year-old man that suffers from type 1 diabetes, diabetic retinopathy, hypertension, and other complications from diabetes.  He is wheelchair-bound and uses an insulin pump.  Defendant cites his deteriorating health condition, exacerbated by his incarceration.  He focuses specifically on his severe diabetic condition, including complications such as Charcot foot and neuropathy, which he contends significantly impairs his ability to function within the confines of a correctional facility.  The Government documents Defendant's medical conditions with BOP Health Services Records.  *See* ECF Nos. 86-1, 86-2, and 86-3.

Defendant's grounds for release are neither compelling nor extraordinary.  All of Defendant's ongoing health concerns appear well-controlled at this time with medication

---

[4]  The Warden also denied previous requests on August 5, 2021, September 3, 2021, and January 28, 2022.  *See* ECF No. 69 at PageID: 809-10; ECF No. 64-1 at PageID #: 362; ECF No. 69 at PageID #: 753-54.

(1:19CR0282)

provided by the institution along with regular monitoring.  He continues to attend follow-up

appointments and is prescribed pain medication for his neuropathy.  Defense counsel expresses

concern as to the progression of his client's illness.  But no new medical or institution records

have been provided to corroborate Defendant's claims.

Defendant's health conditions were all present at the time of sentencing and were

discussed at length by the Court as part of sentencing.  *See* ECF No. 51 at PageID #: 300-301.

The Court of Appeals for the Sixth Circuit has stated that "facts that existed when the defendant

was sentenced cannot later be construed as 'extraordinary and compelling' justifications for a

sentence reduction." *United States v. Hunter*, 12 F.4th 555, 562 (6th Cir. 2021), *cert. denied*,

142 S. Ct. 2771 (2022); *see also United States v. Randall*, No. 23-5144, 2023 WL 6389604 at *4

(6th Cir. Oct. 2, 2023) (affirming denial of compassionate release motion, in part, because

defendant's health conditions existed at the time of sentencing and at the time his earlier motion

for compassionate release was considered).  A contrary rule, according to the Sixth Circuit,

would "render[ ] the general rule of finality and the extraordinary-and-compelling-reasons

requirement 'superfluous, void or insignificant.' " *Id.* at 569 (quoting *Corley v. United States*,

556 U.S. 303, 314 (2009)).  Moreover, the Sixth Circuit has consistently held that defendants

"must show their 'personal circumstances' have 'changed so that the district court should weigh

the § 3553(a) factors differently than it had at the original sentencing.' " *Hunter*, 12 F.4th at 570

(quoting *United States v. Navarro*, 986 F.3d 668, 672 (6th Cir. 2021)); *accord United States v.*

*Sherwood*, 986 F.3d 951, 954 (6th Cir. 2021).

(1:19CR0282)

Defendant has provided argument but no evidence to support his contention that the BOP is not adequately addressing his health conditions.  Defendant does not cite to any medical records or a declaration/affidavit to support his claim that he has suffered life-threatening hypoglycemic episodes, that his insulin pump malfunctioned or that his diabetes care was neglected.  *See* ECF No. 79 at PageID #: 1764 (citing ECF No. 79-1); ECF No. 87 at PageID #: 2767.  Except for having to be sent to the emergency room in June 2024, there is no new evidence or a proven change in circumstances since April 2023 when the Court denied Defendant's first motion for compassionate release.  On the other hand, the Government has shown that Defendant has access to medication and insulin to manage his illnesses, as well as access to regular medical treatment for any new concerns.  There is ample evidence in Defendant's BOP Health Services Records (ECF Nos. 86-1, 86-2, and 86-3) to show that he is receiving adequate medical treatment for his health conditions from various professional health care providers, including Medical Doctors, Radiologists, Ophthalmologists, Pharmacists, a Dentist, a Physician Assistant-Certified ("PA-C"), an Advanced Practice Registered Nurse-Certified Nurse Practitioner ("APRN-CNP"), Certified Family Nurse Practitioners ("FNP-C"), Registered Nurses, and a Licensed Practical Nurse.

Defendant also offers no new evidence to show he is unable to provide self-care within his institution of confinement.[5]  Although Defendant started using a wheelchair in 2021 to get

---

[5]  Defendant has not provided any additional medical documentation since the denial of his Motion for Compassionate Release and/or Commutation to Home Confinement (ECF No. 63) to show that his medical conditions have worsened since his August 2020 sentencing or April 24, 2023 – the date the Court denied his first motion for

(continued...)

8

(1:19CR0282)

around (*see* ECF No. 86-3 at PageID #: 2711-12), that is not an extraordinary and compelling

reason for a sentence reduction.  *See* ECF No. 86-3 at PageID #: 2678-79 ("Arrived to clinic [on

June 14, 2024] in wheelchair with no observed problems."); ECF No. 86-3 at PageID #: 2696

("Arrived to clinic [on June 4, 2024] in wheelchair."); ECF No. 86-2 at PageID #: 2612 ("He is

using a wheelchair [on April 5, 2023], but is able to ambulate with some difficulty and

restriction.").  In fact, the wheelchair likely aids his ability to self-care as he can now more easily

attend meals, participate in recreation time, and attend to his other personal needs.  *See, e.g.,*

*United States v. Bunnell*, No. CR14-00119-001-PHX-DGC, 2019 WL 6114599, at *2 n. 1 (D.

Ariz. Nov. 18, 2019) (defendant "suffers from arthritis, sciatica, bulging lumbar discs 2-5,

scoliosis, and degenerative disease causing central stenosis in his spine," and is confined to a

wheelchair, but none are terminal illnesses or substantially diminish ability to provide self-care

within the environment of a correctional facility).  In December 2023, medical staff commented

that Defendant "has always done a good job of caring for his feet . . ."  ECF No. 86-2 at PageID

#: 2294.  Therefore, Defendant's assertion that the BOP failed to promptly address his medical

needs and that his ability to self-care has diminished (*see* ECF No. 79 at PageID #: 1764) are not

extraordinary and compelling reasons to justify his release.

     Moreover, Defendant's BOP Health Services Records show that any foot infections or

wounds were cared for and resolved with antibiotics. *See, e.g.,* ECF No. 86-3 at PageID #: 2670,

2672, 2687-88, and 2702.  Defendant has also been given medication for chronic pain.  *See, e.g.,*

---

[5](...continued)
compassionate release.

9

(1:19CR0282)

ECF No. 86-3 at PageID #: 2671.  They also show that Defendant is being seen for his diabetic

retinopathy and the condition is being treated and monitored.  *See, e.g.*, ECF No. 86-3 at PageID

#: 2684.  While the medical records do show that in June 2024 Defendant was sent to the

emergency room once for low blood sugar, Butner Low followed up with monitoring and review

of his insulin pump.[6]  *See* ECF No. 86-3 at PageID #: 2694.  In addition, Defendant has regularly

been seen and treated in the Comprehensive Pharmacy Diabetes Management Clinic, which

closely monitors and treats his diabetes.  *See, e.g.*, ECF No. 86-3 at PageID #: 2696.

Defendant does not cite to any medical records or a declaration/affidavit to support his

claim that he has suffered life-threatening hypoglycemic episodes, that his insulin pump

malfunctioned or that his diabetes care was neglected.  *See* ECF No. 79 at PageID #: 1764 (citing

ECF No. 79-1); ECF No. 87 at PageID #: 2767.  Except for having to be sent to the emergency

room, there is no new evidence or a proven change in circumstances since April 2023 when the

Court denied Defendant's first motion for compassionate release.

**2.**

Defendant has failed to show that the Court should reduce his sentence based on U.S.S.G.

§ 1B1.13 (2023), the applicable policy statement issued by the United States Sentencing

---

[6]  An insulin pump is about the size of a small cell phone.  Unlike an insulin
injection, which allows the user to inject insulin into their body using a syringe or "pen,"
an insulin pump gives a basal dose of short- or rapid-acting insulin per hour based on the
individual's blood sugar level.  Insulin injections and insulin pumps are both generally
accepted ways to take insulin.  *See* CDC, 4 Ways to Take Insulin,
https://www.cdc.gov/diabetes/about/4-ways-to-take-insulin.html?CDC_AAref_Val=https
://www.cdc.gov/diabetes/basics/type-1-4-ways-to-take-insulin.html (last visited Nov. 4,
2024).

(1:19CR0282)

Commission.  As relevant here, a movant's medical circumstances can establish extraordinary and compelling reasons justifying release if they meet the requirements of § 1B1.13(b)(1).  Those requirements involve four different possible circumstances:

- (i)  a "terminal illness" with "an end-of-life trajectory";

- (ii)  a serious condition or deterioration "that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover";

- (iii)  a "condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death"; or

- (iv)  the combination of being housed in a facility with (or at imminent risk of having) an infectious disease outbreak or public health emergency while having health risk factors that create a risk that cannot be timely mitigated of severe medical complications.

None of the four medical circumstances detailed in § 1B1.13(b)(1) apply to Defendant.  He does not claim to suffer from a terminal illness, nor does he identify a health-risk related to a disease outbreak or public health emergency.  Furthermore, Defendant does not present any evidence of health risks related to a terminal illness, an infectious disease or a public health emergency.

In addition, Defendant has not shown any failure to provide him with the requisite long-term or specialized medical care.  While Defendant highlights many medical issues in his motion – a history of infections, diabetes, vision issues, podiatric difficulties, and tinnitus – the

11

(1:19CR0282)

medical records show that professionals provided him with responsive care for each of these issues. For example, on June 3, 2024, Defendant reported a toe infection. *See* ECF No. 86-3 at PageID #: 2702. Medical professionals applied antibiotic treatment, and by June 18, 2024, Defendant's toe was no longer infected. *See* ECF No. 86-3 at PageID #: 2670, 2672, 2685. Defendant informed the Court at his sentencing that he requires injections to help prevent further deterioration of his eyesight due to retinopathy. *See* ECF No. 51 at PageID #: 297. Consistent with Defendant's statement, Defendant received an injection for his eyesight on June 7, 2024 at North Carolina Eye Ear Nose and Throat ("NCEENT") and was scheduled to receive a follow-up injection approximately six to eight weeks after his June treatment. *See* ECF No. 86-3 at PageID #: 2742. Regarding Defendant's concerns about tinnitus, the BOP Health Services Records show that he reported concerns about an ear infection on January 4, 2024. Following an examination, the medical professional noted that Defendant's "left ear was slightly red" but stated Defendant's tinnitus was "in remission." ECF No. 86-2 at PageID #: 2284. Almost four weeks later, Defendant returned from an appointment with NCEENT and had "no questions, concerns or injuries" at that time. ECF No. 86-2 at PageID #: 2280. In summary, nothing in the record shows that Defendant's conditions require specialized or long-term care that he is not currently provided by the BOP.

Defendant's medical records also show that he has received appropriate care related to his diabetic medical condition. Defendant's type 1 diabetes has been continuously monitored since his arrival at Butner Low, and it appears that medical support of this non-terminal condition is helping him. *See generally* ECF Nos. 86-1, 86-2, and 86-3. Specifically, Defendant's goal

12

(1:19CR0282)

hemoglobin A1C level is < 7.0%.  *See* ECF No. 86-3 at PageID #: 2682.  The medical notes

detail that Defendant's A1C readings improved from 10.9% in March 2021 to 7.0% in April

2024 using an insulin pump.  *See* ECF No. 86-3 at PageID #: 2717, 2681.  While Defendant's

insulin pump was inadvertently not connected properly one evening in July 2023, the pump was

readily reconnected, and Defendant reported feeling "much better" when he visited the medical

clinic the very next day.  ECF No. 86-2 at PageID #: 2343.  The Government notes that while

Defendant experienced hypoglycemic episodes on July 27, 2023 and August 4, 2023, there is

good reason to believe this episode was caused by Defendant's diet.  Specifically, Defendant's

dormmate reported that Defendant mainly eats candy bars and cakes, and so Defendant was

advised to eat more complex carbohydrates to reduce his frequency of hypoglycemic episodes.

*See* ECF No. 86-2 at PageID #: 2338.  When Defendant's glucose monitoring system stopped

working in March 2023, medical professionals were responsive and replaced it with a

functioning reader.  *See* ECF No. 86-2 at PageID #: 2419.  These medical records show

professionals have been responsive in treating Defendant's diabetic condition.  Accordingly,

Defendant has not shown a failure to receive specialized care for his type 1 diabetes.

**3.**

Accordingly, Defendant does not present an extraordinary and compelling reason for

release within the meaning of § 3582(c)(1)(A) because his medical conditions are being

effectively treated and managed by the BOP.  *See United States v. Bates*, No. 16-CR-20280, 2022

WL 3137415, at *3 (E.D. Mich. Aug. 5, 2022) (motion for compassionate release denied when

the defendant had been vaccinated against COVID-19 and his medical records indicated that all

(1:19CR0282)

his medical conditions were being properly treated and managed by the BOP).  "To be faithful to

the statutory language requiring 'extraordinary and compelling reasons,' it is not enough that

Defendant suffers from . . . chronic conditions that [he] is not expected to recover from.  Chronic

conditions that can be managed in prison are not a sufficient basis for compassionate release."

*United States v. Alvarez*, No. 3:18-cr-158-SI-01, 2020 WL 3047372, at *5 (D. Or. June 8, 2020)

(denying a motion for release from a 50-year-old severely obese defendant suffering from

Hepatitis C, type 2 diabetes, high blood pressure, high cholesterol, chronic liver disease, and

asthma) (quoting *United States v. Ayon-Nunez*, No. 1:16-CR-00130-DAD, 2020 WL 704785, at

*2-3 (E.D. Cal. Feb. 12, 2020)).

Even if Butner Low did experience a health outbreak, Defendant has not shown that any

risk could not be adequately mitigated or that the BOP is unable to adequately treat him if he falls

ill prior to his anticipated release date in October 2029.  Thus, Defendant has not presented

"extraordinary and compelling" reasons for release under 18 U.S.C. § 3582(c)(1)(A)(i).

## C.

Even assuming that extraordinary and compelling reasons exist in this case,

compassionate release is denied based on a balancing of the 18 U.S.C. § 3553(a) sentencing

factors.  In addition to examining whether extraordinary and compelling reasons warrant a

reduction in sentence, courts must consider all pertinent § 3553(a) factors and whether the inmate

poses a danger to the community.  *See United States v. Tomes*, 990 F.3d 500, 504 (6th Cir. 2021)

("[W]e can affirm a [district] court's denial of a defendant's compassionate release motion based

on the [district] court's consideration of the § 3553(a) factors alone."), *cert. denied*, 142 S. Ct.

14

(1:19CR0282)

780 (2022); *United States v. Ruffin*, 978 F.3d 1000, 1008 (6th Cir. 2020) ("We have repeatedly

recognized that district courts may deny relief under the § 3553(a) factors even if 'extraordinary

and compelling' reasons would otherwise justify relief."). Indeed, courts have found that even

when an inmate's medical condition creates an extraordinary and compelling reason for

compassionate release, release is not mandatory and can be refused after weighing the sentencing

factors of § 3553(a). *See United States v. Pegram*, 843 Fed.Appx. 762, 764 (6th Cir. 2021)

(holding that district court's weighing of sentencing factors was, standing alone, sufficient basis

for denial of compassionate release).

   The Court begins with the nature and circumstances of the offenses. Defendant admitted

that he used file-sharing software to download and trade large quantities of child pornography in

the instant conviction. The Court observed at sentencing that Defendant had failed to

acknowledge his intentional harm to real victims and that "no one . . . should have the right to

enjoy [the] rape and torture [of children] in the privacy of his home and not pay the most dire

consequence for that gratification." ECF No. 51 at PageID #: 303. The receipt and distribution

of visual depictions of minors engaged in sexually explicit conduct, and possession of child

pornography – activities that hurt children – present a grave danger to the health, well-being, and

safety of others in the Northeast Ohio community. Although Defendant does not have any prior

criminal history, the nature and circumstances of the serious offenses in the case at bar persuade

the Court to conclude that an early release from Defendant's 121-month sentence would not

comport with the sentencing factors. *See United States v. Pirosko*, No. 5:12CR327, 2021 WL

4976689, at *2 (N.D. Ohio April 13, 2021) (holding that the § 3553(a) sentencing factors

(1:19CR0282)

militated against granting the defendant compassionate release because his "behavior leading up to his crimes was not only dangerous but a contributing factor to the proliferation of the child-pornography market"), *aff'd*, No. 21-3383, 2021 WL 8155161 (6th Cir. Sept. 14, 2021).

The remaining factors also weigh against granting Defendant's motion.  There is a substantial amount of time – over 59 months – remaining on Defendant's thoughtfully imposed sentence.  Early release from incarceration would fail "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense."  § 3553(a)(2)(A). The amount of time Defendant has served thus far is not sufficient to serve the purposes of sentencing.  Releasing Defendant at this time would also fail to afford "adequate deterrence," both specific and general, for the receipt and distribution of visual depictions of minors engaged in sexually explicit conduct, and possession of child pornography.  § 3553(a)(2)(B).  The Commission's policy statement on compassionate release motions at § 1B1.13 also requires the movant to show that he "is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)."  U.S.S.G. § 1B1.13(a)(2); *see United States v. Draper*, No. 5:22-cr-386, 2024 WL 4591480, at *2 n. 2 (E.D. Pa. Oct. 28, 2024) (denying motion for compassionate release).  Nothing offered by Defendant discourages the Court from believing, that at this time, he remains a danger to "the safety of any other person and the community," as articulated in § 3142(g).  Section 3142(g)(1) specifically highlights crimes that "involves a minor victim" as being part of nature and circumstances that can demonstrate a defendant is a danger to the community.

16

(1:19CR0282)

Taken together, the sentencing factors and related guidance, counsel against granting Defendant an early release. Defendant's asserted reasons for early release do not outweigh the significant risks a reduced sentence would pose. *See United States v. Holder* No. 1:18CR0609, 2020 WL 4570524, at * 3 (N.D. Ohio Aug. 7, 2020) (Pearson, J.) (citing *United States v. Morales*, No. 3:19-CR-00121 (KAD), 2020 WL 2097630, at *3 (D. Conn. May 1, 2020) (concluding the defendant continued to pose a real danger to the community and that the risk of this danger outweighed the extraordinary and compelling reason for release created by his medical condition).

Having carefully considered the entire record and weighed the pertinent sentencing factors as required, the Court concludes that the § 3553(a) factors weigh against compassionate release and sentence modification.

### IV.  Conclusion

Defendant's Motion for Compassionate Release Under 18 U.S.C. § 3582(c)(1)(A) (Non COVID) (ECF No. 79) is denied on the merits.

IT IS SO ORDERED.

  November 4, 2024                     /s/ Benita Y. Pearson
Date                                  Benita Y. Pearson
                                      United States District Judge